# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
# CIVIL TRIAL DIVISION

| | |
|---|---|
| GENERAL (RET.) FRANK J. SULLIVAN | : |
| 1103 Tunbridge Lane | : |
| Mechanicsburg PA 17050 | : |
| And | : |
| HAROLD BLEWITT, JR. | : |
| 2103 Chittim Trail Drive | : |
| San Antonio, TX  78232 | : |
| And | : |
| ULASH DAMODAR | : |
| 7984 Canyon Lake Circle | : |
| Orlando, FL  32835 | : |
| Plaintiffs | : |
| v. | : |
| RUSSELL RANKIN | : |
| 821 Chesapeake Ave # 5647 | : |
| Annapolis MD, 21403 | :    DOCKET NO.: |
| And | : |
| EV VENTURES, INC. | : |
| ATT:  Russell G. Rankin | : |
| 821 Chesapeake Ave # 5647 | : |
| Annapolis MD, 21403 | : |
| And | : |
| MID ATLANTIC GEM, LLC | : |
| ATT:  Russell G. Rankin | : |
| 821 Chesapeake Ave # 5647 | : |
| Annapolis MD, 21403 | : |
| And | : |
| POLARIS INDUSTRIES, INC. | : |
| 9955 Fifth Avenue | : |
| Plymouth, NM  55442 | : |
| Defendants | : |

## CIVIL ACTION COMPLAINT

I.     **FACTUAL BACKGROUND**

1

1. The Plaintiff is, GENERAL (RET.) FRANK J. SULLIVAN, (hereinafter "FS"), who is an individual and Pennsylvania resident with a primary residence at 1103 Tunbridge Lane, Mechanicsburg PA 17050.

2. The Plaintiff is, HAROLD BLEWITT, JR., (hereinafter "BLEWITT"), is a Texas resident with a primary residence at 2103 Chittim Trail Drive, San Antonio, TX 78232.

3. The Plaintiff is, ULASH DAMODAR, (hereinafter "DAMODAR"), is a Florida resident with a primary residence at 7984 Canyon Lake Circle, Orlando, Florida 32835.

4. The Defendant is, RUSSELL RANKIN, (hereinafter "RR or RGR"), is a Maryland resident with a primary residence at 821 Chesapeake Ave # 5647, Annapolis MD, 21403.

5. The Defendant is, EV VENTURES, INC., (hereinafter "EV"), is a corporation whose business is located at 821 Chesapeake Ave # 5647, Annapolis MD, 21403.

6. The Defendant is, MID ATLANTIC GEM, LLC, (hereinafter "MID"), is a Limited Liability Company whose business is located at 821 Chesapeake Ave # 5647, Annapolis MD, 21403.

7. The Defendant is, POLARIS INDUSTRIES, INC., (hereinafter "POLARIS"), is a corporation whose business is located at 9955 Fifth Avenue, Plymouth, NM 55442.

8. Jurisdiction in this case is based upon Diversity of Citizenship as all Plaintiffs and all Defendants are citizens of different states, wherein

the Plaintiffs are citizens of the State of Pennsylvania, Texas and Florida and the Defendants are citizens of the States of Delaware and New Mexico, the amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs.

I.      **FACTUAL BACKGROUND**

1) Plaintiff Frank Sullivan, first met Defendant Russell Rankin, (hereinafter "RR" or "RGR") in approximately April of 2014. Mr. Rankin advised Frank Sullivan that he was in the cruiser electric vehicle business, through his own company, and that he also was an authorized agent with Polaris Industries, Inc. (hereinafter "Polaris"). Mr. Rankin represented that he needed $50,000 for a Certificate of Deposit (hereinafter "CD") to show financial viability to Polaris to obtain an electrical vehicle dealership. Frank Sullivan agreed, but only if the CD would be in his name for protection of his asset. Both agreed.

2) Frank Sullivan wrote a check to Russell Rankin for 50K for a bank CD that was to be in Frank Sullivan's name only. Russell Rankin never called Frank Sullivan to go to the bank with him to make sure it was in Frank Sullivan's name.

3) RGR brought an agreement to Frank Sullivan to sign per their discussion about the CD. When Russell Rankin arrived at Frank Sullivan's house terms were not what they agreed to and not at all what they discussed as it stated Frank Sullivan "invested 50K", rather than as collateral for a loan, which RR represented.

3

4) Frank Sullivan was very upset that the agreement was incorrect. Russell Rankin blamed his lawyer for getting it wrong. Russell Rankin advised Frank to sign it as is, so he could at least get the business going and RR would make the needed changes in their agreement.

5) Frank Sullivan signed the agreement based on the above representations of Russell Rankin and, then FS drafted the changes and gave it to RGR. RGR then made many excuses, why RR could not get around to changing the agreement in the following months.

6) Russell Rankin then represented that FS should be named as Vice President of EV Ventures, Inc., and as such FS would be a 10% equity owner and that FS had to sign the Polaris' Agreement. Frank Sullivan agreed and found out later RR never signed as President. Frank Sullivan's signature wrongfully exposed Frank Sullivan only for liability on the lease for a $200,000 line of credit to Polaris.

7) RGR came to Frank Sullivan's house in PA and wrongfully misrepresented to Frank Sullivan that since Frank Sullivan was 10% owner of EV, he had to sign for a lease on the company truck. Russell Rankin misrepresented and said the lease was "paid up" for three years and this was only a formality.

8) Due to RGR's wrongful refusal to change the agreement and then FS finding out a few weeks later that his credit was being struck for a lease, on the truck, FS became very worried.

9) Russell Rankin had six vehicles on loan from Polaris.  FS based on information and belief became aware that Polaris was not paid for these vehicles.  Frank Sullivan contacted Polaris to see what status EV Ventures, Inc., was in.  Frank Sullivan called Polaris and spoke to Joe Ramsey, from Polaris Acceptance Corp and Joe Ramsey wrongfully related that Frank Sullivan is "solely" responsible for the Loan for up to 200K.  Wrongfully the CD only had RGR's name on it and not Frank Sullivan's alone.

10) When Frank Sullivan confronted RGR he first said it was a mistake.  Then RR contradicted himself and said "It had to be that way with Polaris."  Frank Sullivan repeatedly asked RGR why he misrepresented and did not communicate any of this to him.  Frank Sullivan still had an ongoing concern that RGR never changed the agreement.

11) RGR's companies EV Ventures, Inc. and Mid-Atlantic GEM are both Delaware entities solely owned by RR.  They were supposed to be formed with other principals, including FS and others.

12) At a certain point Polaris did an audit and found out RGR did indeed sell two vehicles, got paid and did not notify nor pay Polaris.  Polaris was aware, or should have been aware of the wrongful and fraudulent business practices of its authorized agent RGR.  Frank Sullivan also confirmed some of this to Polaris.  RGR at all times material

hereto, was a duly authorized agent of Polaris, acting within the scope of Polaris' authority.

13) Through audits, Polaris Acceptance discovered EV Ventures and Mid Atlantic GEM had made several material misrepresentations to them particularly as it related to the sale of inventory. As a result Polaris Acceptance revoked RR's ability to get vehicles on loan. Mid Atlantic GEM could only be a cash dealer from that point on with Polaris. Polaris Industries found out from Polaris Acceptance Corporation that there were six (6) vehicles Polaris was to be paid for and three (3) were sold by RGR without sending payment to Polaris.

14) RGR and Frank Sullivan agreed, along with Polaris that despite RGR's name being on the CD, RGR admitted to them it was really Frank Sullivan's money that paid for the CD. Further that Polaris would mail FS the titles to the six vehicles.

15) Russell Rankin offered without prejudice, as a resolution that FS would hold title to the six vehicles and when they were sold FS would get his $50,000 back. After said Agreement, brokered by Polaris Acceptance, giving FS the titles to 6 vehicles to insure that FS would get back his $50,000, Polaris then gave RGR duplicate copies, which RGR then sold and failed to make payments to third parties as promised.

16) Harold Blewitt also gave $50,000 to RGR for 100,000 shares of stock in EV Ventures, Inc. RGR took Blewitt's money and never gave the stock to Harold Blewitt.

17) RGR was supposed to sign the GM Lease as President.  RGR never signed the lease for the truck as President.  Only FS's name and credit was used to get the title to lease the truck.  RR said GM, the auto company made a mistake on the paperwork and RR would fix it.  He never did.

18) Polaris advised that FS's titles were valid.  After conflicting discussion with RGR, FS went to Annapolis and took possession of 2 vehicles and the trailer; by agreement with Polaris.

19) In Nov 2016 RGR contacted FS and asked for a Bill of Sale and copies of the cancelled checks from the sale of the two vehicles

20) Plaintiffs investors herein have, for two years, asked for bank statements and tax documents from RR regarding RR, EV Ventures LLC and Mid Atlantic Gem LLC.  The investors were never shown anything except a spreadsheet on one occasion without much information, by RGR.

21) Plaintiffs parties have never received any stock certificates even though RGR promised to get them to all investors for the past two years.

22) The Plaintiffs believe and therefore aver that RGR is not licensed to sell stock in the State of Maryland but keeps wrongfully acting to secure investors to contribute to his personal and corporate ventures.

23) RGR wrongfully spent almost all of the investor money, including the $50,000 FS invested to get the CD in a wrongful manner, not in the operation of his business, rather said funds were expended on unrelated and unauthorized personal non-business activities.

24) RGR has wrongfully spent investor money including FS's CD on his meals, his gas, his rent, his vacations and wrongfully converted same to personal use.

25) Since March, 2015, FS and the Plaintiff investors have been asking for an accounting by RR of both EVV and MAG.  RR misrepresented to FS that profits from MAG would be transferred to EVV for distribution to investors.  This never occurred.

26) Based on information and belief RGR used part of Harold Blewitt's $50,000 investment wrongfully in EVV to purchase a new truck (prepaid lease) and trailer.  Those assets should have been held in reserve to handle priority contingencies.  RR has also wrongfully converted other sums invested, to his own personal use.

27) FS has found multiple instances of fraud and misuse of funds including the instances set forth above; this includes the number of vehicles, by type, that have been sold, pending sale/delivery, or are in inventory and proper payment was not remitted.  Based on information and belief RR misrepresented that he had a total number of 40 vehicles.  This does not equal the number RR stated in his August 7, 2015 Partnership Newsletter.  This also includes taking cash payments from

customers and wrongfully not turning in the cash to EV Ventures, Inc. as revenue.

## COUNT I
## BREACH OF CONTRACT
## GENERAL (RET.) FRANK J. SULLIVAN, HAROLD BLEWITT, JR., AND ULASH DAMODAR VS. RUSSELL RANKIN, EV VENTURES, INC., MID ATLANTIC GEM, LLC, AND POLARIS INDUSTRIES, INC.

28)   Plaintiffs herein incorporate herein by reference paragraph 1 through 27 as if fully set forth herein.

29)   By failing to perform joint and several contractual obligations to Plaintiffs herein as set forth above, Defendants have materially breached the written agreements as set forth above.

30)   As a direct and proximate result of Defendants breach of contract as set forth above, Plaintiffs have sustained substantial damages.

WHEREFORE, Plaintiffs herein demand the entry of judgment against Defendants joint and severally: (1) for a minimum of $1,100,000, including direct losses of a minimum of $100,000 and $1,000,000 consequential damages; (2) for costs, attorneys' fees, pre-, and post-judgment interest, as applicable; and (3) for such other relief as this Honorable Court finds just and proper.

## COUNT II
## AN ACCOUNTING
## GENERAL (RET.) FRANK J. SULLIVAN, HAROLD BLEWITT, JR. AND ULASH DAMODAR VS. RUSSELL RANKIN, EV VENTURES, INC., MID ATLANTIC GEM, LLC, AND POLARIS INDUSTRIES, INC.

31) Plaintiffs herein incorporate herein by reference paragraph 1 through 30 as if full set forth herein.

32) As stated above the Defendants herein as indicated are in breach of contract and has committed other wrongful acts as set forth in Count I.

33) Accordingly, Plaintiffs herein demand an accounting, to include but not be limited to a full and thorough forensic accounting with respect to all revenues and expenses regarding all of the accounts in Plaintiffs' within Complaint, for a minimum of 60 months prior to date.

WHEREFORE, Plaintiffs herein demand the entry of judgment against Defendants joint and severally: (1) for a minimum of $1,100,000, including direct losses of $100,000 and $1,000,000 consequential damages; (2) for costs, attorneys' fees, pre-, and post-judgment interest, as applicable; and (3) for such other relief as this Honorable Court finds just and proper.

### COUNT III
### FRAUD IN THE INDUCEMENT, FAILURE TO SUPERVISE AGENT/RESPONDENT SUPERIOR AND PUNITIVE DAMAGES GENERAL (RET.) FRANK J. SULLIVAN, HAROLD BLEWITT, JR. AND ULASH DAMODAR VS. RUSSELL RANKIN, EV VENTURES, INC., MID ATLANTIC GEM, LLC, AND POLARIS INDUSTRIES, INC.

34) Plaintiffs herein incorporate herein by reference paragraph 1 through 33 as if full set forth herein.

35) Defendants knew or should have known the representations as specifically set forth in §1-10, §12-27 above to be false and made them with the purpose of inducing the Plaintiffs to engage in the actions

specified above.  Further, Plaintiffs then relied on these misrepresentations of the Defendants herein.

36)   As a direct and proximate result of the Defendants' misrepresentations Plaintiffs have suffered direct losses and consequential damages as indicated herein.

37)   As a direct and proximate result of the herein Defendants' misrepresentations, Plaintiffs have suffered direct losses and consequential damages in excess of $1,100,000.

38)   i.  According to the above, it is apparent that the Defendant, Polaris, was negligent either intentionally and/or was negligent in its supervision of the Defendant, Russell Rankin, and his companies, EV Ventures, Inc., and Mid Atlantic Gem, LLC.  That at all times material therein in connection with Polaris, Russell Rankin and the aforesaid entities were acting also as agents for the Defendant, Polaris, on a respondent superior basis, either with actual and/or apparent authority and that the actions they engaged in were within the scope of their authority and were known or should have been known by the Defendant, Polaris, and accordingly, under principal and agent theory the principal Polaris is liable and responsible for the actions of Russell Rankin.

ii.  Defendants' actions joint and severally were willful, vexatious, malicious and without reasonable justification or excuse. These actions were undertaken by the Defendants herein with the sole intent to harm the Plaintiffs herein.  Therefore, Plaintiffs have also

suffered punitive damages in the amount to be set by the Court, which is just and proper.

WHEREFORE, Plaintiffs herein demand the entry of judgment against Defendants joint and severally: (1) for a minimum of $1,100,000, including direct losses of $100,000 and $1,000,000 consequential damages; (2) for costs, attorneys' fees, pre-, and post-judgment interest, as applicable; and (3) for such other relief as this Honorable Court finds just and proper.

## COUNT IV
## CIVIL CONSPIRACY
## GENERAL (RET.) FRANK J. SULLIVAN, HAROLD BLEWITT, JR. AND ULASH DAMODAR VS. RUSSELL RANKIN, EV VENTURES, INC., MID ATLANTIC GEM, LLC, AND POLARIS INDUSTRIES, INC.

39) Plaintiffs herein incorporate by reference paragraph 1 through 38 as if full set forth herein.

40) In connection with all activities herein Defendants joint and severally have, based on information and belief have engaged in wrongful fraudulent activity as indicated herein.  The conduct of Defendants, collectively and/or individually, was the result of a concerted action, plan, scheme and conspiracy between the within Defendants the goal of which was to illegally, improperly and wrongfully interfere with, injure and misrepresent the contractual relationships between Plaintiffs herein and Defendants herein.

41) In furtherance of carrying out the aforementioned conspiracy, Defendants did, in fact, interfere with the herein Plaintiffs' contractual relationship and monetary payments.

42) As a direct and proximate result of the conspiracy of the Defendants with third party actions and in actual furtherance of said conspiracy, Plaintiffs herein have suffered a loss of potential payments and economic benefits.

WHEREFORE, Plaintiffs herein demand the entry of judgment against Defendants joint and severally: (1) for a minimum of $1,100,000, including direct losses of $100,000 and $1,000,000 consequential damages; (2) for costs, attorneys' fees, pre-, and post-judgment interest, as applicable; and (3) for such other relief as this Honorable Court finds just and proper.

**COUNT V**
**PROMISORY ESTOPPEL**
**GENERAL (RET.) FRANK J. SULLIVAN, HAROLD BLEWITT, JR., AND ULASH DAMODAR VS. RUSSELL RANKIN, EV VENTURES, INC., MID ATLANTIC GEM, LLC, AND POLARIS INDUSTRIES, INC.**

43) Plaintiffs incorporate herein by reference paragraphs 1 through 42 as if same were set forth in extenso.

44) As an inducement to Plaintiffs to invest as they did, the Defendants made the promises and representations as set forth above. Those promises and representations were made in order to estop the Plaintiffs from seeking alternative investment opportunities.

WHEREFORE, Plaintiffs herein demand the entry of judgment against Defendants joint and severally: (1) for a minimum of $1,100,000, including direct losses of $100,000 and $1,000,000 consequential damages; (2) for costs, attorneys' fees, pre-, and post-judgment interest, as applicable; and (3) for such other relief as this Honorable Court finds just and proper.

Respectfully Submitted,

DATED: 12/23/16                By:   /s/
                               JEFFREY D. SERVIN, ESQUIRE
                               Attorney for Plaintiffs
                               Attorney I.D. 19958
                               1800 JFK Blvd., Suite 300
                               Philadelphia, PA 19103
                               Phone: (215) 665-1212
                               Fax: (215) 654- 0357
                               Email:  JDServin@comcast.net